UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EQUAL EMPLOYMENY OPPORTUNITY
COMMISSION,

      Plaintiff,
v.               **DECISION AND ORDER**
                   16-CV-842S

UPSTATE NIAGARA COOPERATIVE, INC.,

      Defendant.

## I. INTRODUCTION

Plaintiff Equal Employment Opportunity Commission ("EEOC") filed this action against Defendant Upstate Niagara Cooperative, Inc. ("Upstate Niagara") after a former applicant filed charges with the EEOC alleging sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-f(1) and (3), and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981(a). The EEOC alleges that since 2009, Upstate Niagara has discriminated against qualified female applicants in favor of hiring less qualified men throughout its facilities. The EEOC also alleges that Upstate Niagara has failed to comply with the record-keeping requirements of Section 709(c) of Title VII, 42 U.S.C. § 2000e-8(c).

Presently before this Court is Upstate Niagara's motion to dismiss the EEOC's complaint in its entirety on the basis that some of the claims are time barred, and that the remaining claims fail to state a claim upon which relief can be granted pursuant to Rule 12 (b)(6) of the Federal Rules of Civil Procedure. (Docket No. 8) With briefing fully completed and oral argument deemed unnecessary, this Court will deny Upstate Niagara's motion.

## II. BACKGROUND

The facts alleged in the complaint are assumed to be true. See Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007) ("[A] judge ruling on a defendant's motion to dismiss a complaint must accept as true all of the factual allegations contained in the complaint." (internal quotation marks omitted)).

The Complaint alleges that since at least 2009, Upstate Niagara has engaged in unlawful employment practices at its three largest facilities by failing to hire qualified women for various positions in favor of equally or less qualified men, "including hiring male applicants with no relevant past work experience at all." (Complaint, Docket No. 1, ¶ 13(a), (b), (g)) The Complaint also alleges that since 2009, Upstate Niagara has failed to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed, including employment applications, interview documentation, and other hiring-related documentation. (Id. ¶ 15)

Between 2008 and 2014, Upstate Niagara "hired approximately 160 employees into production-related positions at its Rochester, Dale Road and West Seneca facilities," and "[d]espite a pool of qualified female candidates, [Upstate Niagara] hired 155 men and only 5 women at those facilities." (Id. ¶ 13(g)) At its Dale Road and Rochester facilities, Upstate Niagara hired no women at all into production-related positions in the same time frame. (Id. ¶ 13(e)) For example, in August 2009, one female applicant to Upstate Niagara's West Seneca facility had over 10 years of experience as a machine operator and 7.5 years of production-related experience, but was never contacted for an interview, and a man (her husband) was hired for the position instead. (Id. ¶ 13(h))

The Charging Party, Gail Haas, applied for a temporary production position at Upstate Niagara's West Seneca facility in April 2010; the position entailed "various machine operation and warehouse duties" as well as "regularly stack[ing]/unstacking[ing] cases weighing up to 55 lbs, lift[ing]/maneuver[ing] from floor to shoulder level, and frequently mov[ing] stacks of products with a hook, pallet jacks, two wheelers or dollies." (Id. ¶ 13(j)) With "over [9] years of experience in food production, including as a machine operator and forklift driver and lifting and stacking heavy containers," Haas was qualified for the position. (Id. ¶ 13(k)) Following an interview in April 2010, Haas was offered the position, subject to passing a physical exam. (Id. ¶ 13(l)) During the examination, Haas was asked to lift a 50 pound crate to table height and then from table height to over her shoulders; Haas objected to lifting the crate above her shoulders, believing it would violate OSHA regulations. (Id. ¶ 13(m)) At the conclusion of Haas' physical exam, Haas was told that she passed the exam. (Id.) Nonetheless, Haas was not hired for the position; during the same time frame and at the same West Seneca facility, Upstate Niagara hired five men in production-related jobs. (Id. ¶ 13(n), (o))

In May 2010, Gail Haas filed a charge with the EEOC, alleging that Upstate Niagara's pre-employment physical examination had a disparate impact on female applicants. (Weissflach Decl., Ex. B., Docket No. 8-1) In June 2010, the EEOC initiated an investigation and requested from Upstate Niagara various employment records, including demographic information regarding all employees and job applicants and descriptions for such positions. (Id., Ex. C) The EEOC subsequently issued Upstate Niagara two more information requests in October 2011 and February 2013, for
3

information regarding its hiring policies, and also directed Upstate Niagara to comply with the EEOC's record-keeping regulations. (Id., Exs. D, E) In October 2015, the EEOC issued a Letter of Determination, concluding that Upstate Niagara engaged in a pattern or practice of disparate treatment in hiring on the basis of sex, but found that Upstate Niagara's lifting requirement for the physical examination did not have a disparate impact on women. (Id., Ex. G; Compl. ¶ 7)

After unsuccessfully engaging in conciliation efforts with Upstate Niagara, (Compl. ¶¶ 8-10), the EEOC instituted this action on October 24, 2016, by filing a complaint in the United States District Court for the Western District of New York. (Docket No. 1) Upstate Niagara filed the instant Motion to Dismiss on January 31, 2017. (Docket No. 8). The EEOC responded in opposition on March 7, 2017. (Docket No. 11). Upstate Niagara filed a reply on March 21, 2017. (Docket No. 12)

### III. DISCUSSION

Upstate Niagara advances four grounds for dismissal: (1) the claims of disparate treatment raised in the Complaint are outside the scope of the EEOC charge; (2) the scope of the alleged class is limited by the statutory time limits in Section 706; (3) the Complaint fails to state a cause of action for sex discrimination; (4) the EEOC was required to plead a "pattern-or-practice" claim; and (5) the Complaint fails to state a claim that Upstate Niagara failed to make and preserve records in violation of the Title.

**A.     Rule 12 (b)(6) Standard**

Rule 12 (b)(6) allows dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12 (b)(6). Federal pleading standards are

generally not stringent: Rule 8 requires only a short and plain statement of a claim. Fed. R. Civ. P. 8 (a)(2). But the plain statement must "possess enough heft to show that the pleader is entitled to relief." Twombly, 550 U.S. at 557.

When determining whether a complaint states a claim, the court must construe it liberally, accept all factual allegations as true, and draw all reasonable inferences in the plaintiff's favor. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Legal conclusions, however, are not afforded the same presumption of truthfulness. Id. (the tenet that a court must accept as true all factual allegations contained in a complaint is inapplicable to legal conclusions).

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. (quoting Twombly, 550 U.S. at 570). Labels, conclusions, or "a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. Facial plausibility exists when the facts alleged allow for a reasonable inference that the defendant is liable for the misconduct charged. Iqbal, 556 U.S. at 678. The plausibility standard is not, however, a probability requirement: the pleading must show, not merely allege, that the pleader is entitled to relief. Twombly, 550 U.S. at 556; Fed. R. Civ. P. 8 (a)(2). Well-pleaded allegations in the complaint must nudge the claim "across the line from conceivable to plausible." Id. at 570.

**B. Analysis**

    **1. Scope of EEOC Enforcement Actions**

        **a. Claims Raised in the EEOC Charge**

As a threshold matter, Upstate Niagara argues that the disparate treatment claims brought in this lawsuit must be dismissed because they are beyond the scope of the disparate impact claims raised in Gail Haas' EEOC charge. (See Def. Br. at 4-8)

Under Section 706 of Title VII, the EEOC may file a charge against a private employer on behalf of a "person or persons aggrieved" by an unlawful employment practice. 42 U.S.C. § 2000e5(f)(1). "Section 706(a) empowers the EEOC 'to prevent any person from engaging in any unlawful . . . practice' as set forth in the Title. Section 706(f)(1) specifically authorizes the EEOC to bring a civil action against any respondent not a governmental entity upon failure to secure an acceptable conciliation agreement, the purpose of the action being to terminate unlawful practices and to secure appropriate relief." Gen. Tel. Co. of the Nw. v. Equal Employment Opportunity Comm'n, 446 U.S. 318, 323-24 (1980) (quoting § 2000e5(g)). "When the EEOC acts, albeit at the behest of and for the benefit of specific individuals, it acts also to vindicate the public interest in preventing employment discrimination." Id. at 326.

Accordingly, unlike private actions, "EEOC enforcement actions are not limited to the claims presented by the charging parties." Id. at 331; see also E.E.O.C. v. Kelley Drye & Warren, LLP, No. 10 CIV. 655 LTS MHD, 2011 WL 3163443, at *3 (S.D.N.Y. July 25, 2011) ("The content of an individual complainant's charge does not limit the scope of a lawsuit brought by the EEOC in an enforcement capacity." (collecting cases)); E.E.O.C.

v. Johnson & Higgins, Inc., 91 F.3d 1529, 1536-37 (2d Cir. 1996) (EEOC's authority to combat age discrimination is independent of the filing of a charge); E.E.O.C. v. Sidley Austin LLP, 437 F.3d 695, 696 (7th Cir. 2006) (EEOC's enforcement authority is "not derivative of the legal rights of individuals even when it is seeking to make them whole").

"The charge merely provides the EEOC with a jurisdictional springboard to investigate whether the employer is engaged in any discriminatory practices; and that investigation may well disclose illegal practices other than those listed in the charge." E.E.O.C. v. Thomas Dodge Corp. of N.Y., 524 F. Supp. 2d 227, 235 (E.D.N.Y. 2007) (internal citation, quotation marks, and alterations omitted). "So long [1] as the additional discriminatory practices, or victims, 'have been ascertained in the course of a reasonable investigation of the charging party's complaint and [2] the EEOC [has] provided adequate notice to the defendant-employer of the nature of such charges to allow resolution of the charges through conciliation,'" those additional claims may be brought in a lawsuit. E.E.O.C. v. Sterling Jewelers, Inc., No. 08-CV-706, 2010 WL 86376, at *4 (W.D.N.Y. Jan. 6, 2010) (quoting Thomas Dodge Corp., 524 F. Supp. 2d at 236); Gen. Tel. Co., 446 U.S. at 331 ("Any violations that the EEOC ascertains in the course of a reasonable investigation of the charging party's complaint are actionable.").

Here, it appears that the allegations in the Complaint—that Upstate Niagara has discriminated against female applicants by denying employment opportunities to qualified female applicants—were ascertained in the course of a reasonable investigation of the charging party Haas' complaint that Haas "and other females have been denied [employment] due to [Upper Niagara's] policy" which Haas believed to have a disparate

7

impact on women. (Weissflach Decl., Ex. G) Both claims involved discrimination on the basis of sex. Upstate Niagara argues that any claims of disparate treatment alleged in the Complaint cannot be reasonably related to the disparate impact claim raised in Gail Haas' EEOC charge, because "Haas is not affected by the [disparate treatment] claim made here[] because she in fact received an offer of employment," relying primarily on E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc., 201 F. Supp. 3d 837 (E.D. Mich. 2016), which was recently overturned by the Sixth Circuit, including the portions on which Upstate Niagara relies to support its proposition. See E.E.O.C. v. R.G. & G.R. Harris Funeral Homes, Inc., 884 F.3d 560 (6th Cir. 2018). In Harris Funeral Homes, the district court concluded that the EEOC lacked the authority to bring a claim against an employer for discriminatory clothing allowance, simply because it was not raised in the initial EEOC charge and did not relate to the wrongful termination claim raised in the EEOC charge. See 201 F. Supp.3d at 868-69.

On appeal, the Sixth Circuit disagreed, concluding that "the EEOC's investigation into the Funeral Home's discriminatory clothing-allowance policy concerns precisely the same type of discrimination—discrimination on the basis of sex—that [the charging party] raised in her initial charge." 884 F.3d at 599. In so concluding, the Sixth Circuit emphasized that its jurisprudence had "developed a broad conception of the sort of claims that can be 'reasonably expected to grow out of the initial charge of discrimination.'" Id. Accordingly, the court concluded that based on the charging party's EEOC charge—that she was fired after sharing her intention to present and dress as a woman—it was reasonable to expect "that the EEOC would investigate the Funeral Home's employee-

8

appearance requirements and expectations, would learn about the Funeral Home's sex-specific dress code, and would thereby uncover the Funeral Home's seemingly discriminatory clothing-allowance policy." Id. Here, too, based on the charging party Haas' initial charge that Upstate Niagara's lifting requirement in its physical examination had a disparate impact on female applicants, it was reasonable that the EEOC would conduct an investigation into any potential hiring disparities based on sex at Upstate Niagara.

Upstate Niagara also appears to argue that because disparate impact claims are separate from disparate treatment claims, they cannot as a matter of law be reasonably related to one another and that the disparate treatment claims may not move forward. (See Def. Br. at 8) That likely would be the case if this were a private action, because ordinarily, "disparate treatment allegations are not 'reasonably related' to disparate impact claims for purposes of exhaustion." Cerni v. J.P. Morgan Sec. LLC, 208 F. Supp. 3d 533, 542 (S.D.N.Y. 2016) (citing Burgis v. N.Y.C. Dep't of Sanitation, 798 F.3d 63, 71 (2d Cir. 2015)). But, as stated previously, unlike private actions, "EEOC enforcement actions are not limited to the claims presented by the charging parties." Gen. Tel. Co., 446 U.S. at 331. As such, the restriction being advanced by Upstate Niagara is inapposite.

Further, it appears that adequate notice of claim was given to Upstate Niagara via the Letter of Determination on October 19, 2015, wherein it informed that Upstate Niagara's "records did reveal evidence that [Upstate Niagara] discriminated against a class of similarly aggrieved women on the basis of sex when it refused to hire them for production positions." (Weissflach Decl., Ex. G). This letter subsequently triggered

9

conciliation efforts between the EEOC and Upstate Niagara, which were ultimately unsuccessful. (Compl. ¶¶ 7-10) Accordingly, because information regarding alleged disparate treatment of female applicants "was ascertained by the EEOC in the course of a reasonable investigation into the charging party's complaint and the EEOC provided notice to [Upstate Niagara] regarding the full scope of the investigation and charges, as well as an opportunity to conciliate," Thomas Dodge Corp., 524 F. Supp. 2d at 237, the allegations of disparate treatment in the Complaint will not be dismissed.

### b. Statutory Time Limits of Section 706

Upstate Niagara also asserts that the scope of the alleged class of aggrieved female applicants is limited by the statutory time limits in Section 706. Specifically, Upstate Niagara argues that the EEOC must exclude claims that occurred prior to December 22, 2014 (300 days prior to October 19, 2015, the date the EEOC issued the Letter of Determination identifying the disparate treatment claims) because that is when Upstate Niagara was first "accused of a 'pattern or practice of disparate treatment in hiring on the basis of sex.'" (Def. Br. at 20-21) That is because, Upstate Niagara contends, the Letter of Determination was the first time the EEOC satisfied the notice requirements of Section 706. (Id. at 20)

Upstate Niagara's argument misses the mark.[1] "[T]he sole limitation on the

---

[1] The cases upon which Upstate Niagara relies are inapposite and in any case nonbinding on courts within this Circuit. See E.E.O.C. v. Optical Cable Corp., 169 F. Supp. 2d 539, 547 (W.D. Va. 2001) (addressing whether a 180 day or 300 day limitations period applies to actions brought under Section 707 (not Section 706)); E.E.O.C. v. Freeman, No. RWT 09cv2573, 2011 WL 337339, at *5 (D. Md. Jan. 31, 2011) (barring claims of discrimination on the basis of criminal history outside of 300 day period of initial charge where initial charge raised claims of discrimination on basis of race); E.E.O.C. v. Princeton Healthcare Sys., No. CIV.A. 10-4126 PGS, 2012 WL 5185030, at *5 (D.N.J. Oct. 18, 2012) (finding that statute of limitations for

EEOC's ability to proceed with an enforcement action is that a charge be filed with the EEOC within 300 days of a violation." Sterling Jewelers, Inc., 2010 WL 86376, at *5 (emphasis in original). "This doctrine not only applies to additional illegal practices that the EEOC discovers during the course of a reasonable investigation of the charge, but also to additional victims who are uncovered during such investigation." Thomas Dodge Corp., 524 F. Supp. 2d at 236 (emphasis added); cf. E.E.O.C. v. Bloomberg L.P., 751 F. Supp. 2d 628, 646 (S.D.N.Y. 2010) ("The EEOC may not, at least in a case alleging discrete unlawful acts, seek relief for individuals who were not subject to an unlawful employment practice some time during the 300 days preceding the filing of the triggering charge.") (emphasis added). Upstate Niagara does not dispute that a charge was filed on May 18, 2010. "Therefore, since at least one administrative charge was filed with the EEOC within the 300-day period," Defendant had "adequate notice" of the nature of the disparate treatment allegations. Sterling Jewelers, Inc., 2010 WL 86376, at *5.

Because Gail Haas filed her charge with the EEOC on May 18, 2010, the liability period for any alleged violations begins on July 22, 2009. See 42 U.S.C. § 2000e-5(e)(1).

**2. Title VII**

Title VII of the Civil Rights Act of 1964 forbids employers to: (1) "fail . . . to hire" an applicant (2) "because of" (3) "such an individual's . . . sex." 42 U.S.C. § 2000e–2(a)(1). The Supreme Court's decision in McDonnell Douglas Corp. v. Green, 411 U.S. 792

---

ADA claims would look back 300 days from date the EEOC informed defendant employer that it would be expanding initial sex discrimination investigation into entirely separate possible ADA violations).

(1973), and subsequent Supreme Court precedent, "established the nature of a prima facie case of discrimination under Title VII." Littlejohn v. City of N.Y., 795 F.3d 297, 307 (2d Cir. 2015). To establish a prima facie case, a plaintiff must "make a showing (1) that she is a member of a protected class, (2) that she was qualified for the position she sought, (3) that she suffered an adverse employment action, and (4) can sustain a minimal burden of showing facts suggesting an inference of discriminatory motivation." Id. at 311. If a plaintiff has satisfied these prima facie requirements, "a presumption of discriminatory intent arises in her favor, at which point the burden of production shifts to the employer, requiring that the employer furnish evidence of reasons for the adverse action." Id.

In Littlejohn, the Second Circuit clarified the interplay between the McDonnell Douglas framework and the pleading requirements set forth in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), and Ashcroft v. Iqbal, 556 U.S. 662 (2009).[2] The Second Circuit explained that, at the motion to dismiss stage, "what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311. "The facts required . . . to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal

---

[2] The Court notes that neither party discusses Littlejohn or its applicability in this lawsuit, which was commenced in October 2016—over one year after Littlejohn was decided by the Second Circuit.

12

inference of discriminatory motivation." Id.; see also Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir. 2015).

Defendant does not dispute that the first three prongs of the McDonnell Douglass framework have been satisfied. Consequently, only the fourth prong is at issue: whether the Complaint provides plausible support that Upstate Niagara's alleged pattern of failure to hire female applicants took place under circumstances giving rise to an inference of discrimination. To support a minimal inference of discrimination, a plaintiff may allege disparate treatment by showing "the more favorable treatment of employees not in the protected group," Littlejohn, 795 F.3d at 312 (quoting Leibowitz v. Cornell Univ., 584 F.3d 487, 502 (2d Cir. 2009)), who are "similarly situated in all material respects." Brown v. Daikin Am. Inc., 756 F.3d 219, 230 (2d Cir. 2014) (quoting Graham v. Long Island R.R., 230 F.3d 34, 39 (2d Cir. 2000)). "Whether two employees are similarly situated ordinarily presents a question of fact for the jury." Graham, 230 F.3d at 39; Mandell v. Cty. Of Suffolk, 316 F.3d 368, 379 (2d Cir. 2003) ("A plaintiff relying on disparate treatment evidence 'must show she was similarly situated in all material respects to the individuals with whom she seeks to compare herself.' Ordinarily, the question of whether two employees are similarly situated is a question of fact for the jury." (quoting Graham, 230 F.3d at 39)).

With respect to the EEOC's claims that Upstate Niagara has denied employment opportunities to women in favor of hiring less qualified men, the EEOC has alleged facts giving "at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311. The Second Circuit has made clear

13

that "an inference of discrimination [] arises when an employer replaces a terminated or demoted employee with an individual outside the employee's protected class." Id. at 312-13; Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001) ("[T]he mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination."). Within this Circuit, district courts have held that this standard applies with equal force in the failure-to-hire context. In other words, where, as here, the Complaint alleges that an employer hired someone outside of the aggrieved individuals' protected class, that is enough to raise an inference of discrimination at the motion to dismiss stage of litigation. See, e.g., Szewczyk v. City of New York, et. al., 15-CV-918(MKB), 2016 WL 3920216, at *6 (E.D.N.Y. July 14, 2016) ("In the failure to hire context, an employer's choice of a less qualified employee not from plaintiff's protected class raises an inference of discrimination sufficient to establish a prima facie case of discrimination."); Maratea v. State of Connecticut Department of Education, No. 14-cv-1785(VAB), 2016 WL 777902, at *3 (S.D.N.Y. Feb. 29, 2016) ("DOE hired a person outside of Plaintiff's protected class. The fact that an employer favored someone outside of the relevant protected class will ordinarily suffice to sustain an inference of discrimination." (internal citation, quotation marks, and alteration omitted)).

Here, the Complaint alleges that Upstate Niagara engaged in a pattern of "depriv[ing] Haas and other qualified female applicants of equal employment opportunities and otherwise adversely affect their status as applicants for employment, because of their sex." (Compl. ¶ 14) The Complaint also alleges that female and male applicants for the same positions were at least similarly situated (and that some female applicants were in

14

fact more qualified), but that male applicants were hired over female applicants because of their sex. The Complaint cites statistics regarding the disparity between male and female employees at Upstate Niagara's facilities, and alleges that qualified female applicants were passed over for employment in favor of men, some of whom had "no relevant past work experience at all." (Id. ¶ 13(f)) Drawing all reasonable inferences in the EEOC's favor, under the relaxed pleading standards articulated by Littlejohn, this sufficiently states plausible support to a minimal inference of discriminatory motive.

Upstate Niagara argues that the allegations regarding Gail Haas must be dismissed because the Complaint fails to allege facts "connect[ing] the decision to rescind her job offer with her gender in any way, and in fact admit that the decision was related to her admitted refusal to complete the [physical examination]." (Def. Br. at 10) Specifically, Upstate Niagara argues that the Complaint's failure to allege that the five men hired for production-related jobs (which Haas, too, applied for) were "significantly less qualified than Haas" or that the five men "refused/failed to complete the required physical examination" is fatal to the sex discrimination claim. (Id. at 11) Upstate Niagara misconstrues Plaintiff's obligation at the pleading stage. "Ultimately, the [EEOC] will be required to prove that the employer-defendant acted with discriminatory motivation. However, in the first phase of the case, the prima facie requirements are relaxed." Littlejohn, 795 F.3d at 306 (emphasis added). At this stage, the allegations in the Complaint "need only give plausible support to a minimal inference of discriminatory motivation." Id. at 311 (emphasis added). The factual allegations in the EEOC's Complaint are sufficient as a matter of law to create a "minimal inference" that Gail Haas'

sex played a role in Upstate Niagara's hiring decision, under Littlejohn's "relaxed" pleading standard. Accordingly, the motion to dismiss for failure to state a cause of action for sex discrimination based on her sex will be denied.

### 3. Pattern or Practice

Finally, Upstate Niagara argues that because the EEOC seeks to vindicate the rights of a class of individuals, it is not permitted to bring this suit under Section 706, but rather must bring it under Section 707, which explicitly references pattern or practice claims. (Def. Br. at 15-17) Compare Section 706 (authorizing the "[EEOC] to eliminate . . . unlawful employment practice by informal methods of conference, conciliation, and persuasion," and providing that if such efforts are unsuccessful, "the [EEOC] may bring a civil action against [the] [employer]"), with Section 707 (authorizing the EEOC to "bring a civil action" against a private entity when it "has reasonable cause to believe that any person or group of persons is engaged in a pattern or practice of resistance to the full enjoyment of any of the rights secured by this subchapter").

The Court disagrees. The EEOC may bring its current claims against Defendant under the authorization provided by Section 706 of Title VII, and need not plead a pattern or practice claim of discrimination. See E.E.O.C. v. Mavis Discount Tire, Inc., 129 F. Supp. 3d 90, 109 (S.D.N.Y. 2015) (holding that "the EEOC may maintain a pattern-or-practice claim under Section 706"). "A pattern or practice case is not a separate and free-standing cause of action . . . , but is really merely another method by which disparate treatment can be shown." Chin v. Port Authority of New York & New Jersey, 685 F.3d 135, 148–49 (2d Cir. 2012) (quoting in a parenthetical Celestine v. Petroleos de

Venezuela SA, 266 F.3d 343, 355 (5th Cir. 2001)) (internal quotation marks omitted); see also United States v. City of New York, 717 F.3d 72, 83 (2d Cir. 2013) (same); Mavis Discount Tire, Inc., 129 F. Supp. 3d at 107 (same). Rather, "pattern-or-practice" refers to a method of proof, which courts have "found to be available in some types of discrimination actions, but not others." Mavis Discount Tire, 129 F. Supp. 3d at 107; see, e.g., Franks v. Bowman Transp. Co., 424 U.S. 747, 772 (1976) (holding that class action plaintiffs may "carr[y] their burden [by] demonstrating the existence of a discriminatory hiring pattern and practice"); Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 362 (permitting the Government to rely on "proof of the pattern or practice" to "support[] [the] inference" of discrimination under Section 707); Chin, 685 F.3d at 150 (holding that "the pattern-or-practice method of proof is not available to nonclass, private plaintiffs). At this stage, Plaintiff is not required to prove its allegations; rather, the Court's task is to determine whether Plaintiff has alleged facts giving "at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn, 795 F.3d at 311. Thus, the EEOC's Complaint suffices.

**4. Record-Keeping Allegations**

Section 709(c) provides that: "[e]very employer . . . shall [i] make and keep such records relevant to the determinations of whether unlawful employment practices have been or are being committed, [ii] preserve such records for such periods, and [iii] make such reports therefrom as the Commission shall prescribe by regulation[.]" 42 U.S.C. § 2000e–8(c). In turn, the applicable regulation requires that:

> Any personnel or employment record made or kept by an employer

> (including but not necessarily limited to . . . application forms submitted by applicants and other records having to do with hiring . . .) shall be preserved by the employer for a period of one year from the date of the making of the record or the personnel action involved, whichever occurs later . . . . Where a charge of discrimination has been filed, . . . the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or the action.

29 C.F.R. § 1602.14. Here, the EEOC alleges that "[s]ince at least 2009," Upstate Niagara "failed . . . to make and preserve records relevant to the determination of whether unlawful employment practices have been or are being committed"; that these records include but are not limited to "employment applications, complete applicant logs, interview documentation, and other hiring-related documentation" and that Defendant failed to retain hiring-related material for one year; and that "Defendant failed to retain and preserve applications and hiring-related material that were plainly relevant to the Charge's allegations of Defendant's sex discrimination in hiring" after Haas filed her Charge of Discrimination. (Compl. ¶ 15) Taken together, these facts are sufficient to state a claim of a record-keeping violation. Accordingly, the record-keeping claim will not be dismissed.

## IV. CONCLUSION

Based on the foregoing, this Court finds that the EEOC has stated claims for discrimination based on her sex and failure to preserve records in violation of Title VII.

## V. ORDERS

IT HEREBY IS ORDERED, that Defendant's Motion to Dismiss (Docket No. 8) is DENIED.

FURTHER, that Upstate Niagara Cooperative, Inc., is directed to answer the

Complaint.

SO ORDERED.

Dated: October 26, 2018
       Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge