**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 16-cv-00842-WMS-HBS |
| v. | ) ) | |
| UPSTATE NIAGARA COOPERATIVE, INC., | ) ) | |
| Defendant. | ) ) ) | |

## CONSENT DECREE

Plaintiff United States Equal Employment Opportunity Commission ("EEOC") filed this action alleging that Upstate Niagara Cooperative, Inc. ("Upstate") violated Title VII of the Civil Rights Act of 1964 and Title I of the Civil Rights Act of 1991 by refusing to hire qualified female applicants for production-related positions at three of its dairy production facilities. The Complaint also alleged that Upstate failed to retain applications and related hiring documents, in violation of the record-keeping requirements of Title VII.

This Consent Decree ("Decree") is a compromise of disputed claims and is not an admission of the merit of any claim or defense.

As a result of comprehensive settlement negotiations, the EEOC and Upstate have agreed that this action should be resolved by entry of this Decree, and therefore do hereby stipulate and consent to the entry of this Decree as final and binding on the parties, including Upstate's successors, assigns, subsidiaries, and any other entity with which Upstate may merge or consolidate. The parties have agreed that this Decree may be entered into without findings of fact and conclusions of law having been made and entered by the Court.

1

In consideration of the mutual promises and agreements contained in this Decree, the sufficiency of which is hereby acknowledged, the parties agree as follows, the Court finds appropriate, and it is therefore ORDERED, ADJUDGED AND DECREED that:

## GENERAL PROVISIONS

1.      This Decree is final and binding on the parties and fully and finally resolves all claims asserted by the Complaint in this action and the underlying Charge No. 525-2012-00378. The EEOC will not use the Charge relating to this lawsuit as the jurisdictional basis for filing any other lawsuit or lawsuits against Upstate. This Decree does not resolve any other charge of discrimination pending before the EEOC, or any charge that may be filed in the future.

2.      The parties agree and the Court finds that this Court has jurisdiction of the subject matter of this action and of the parties and that venue is proper.

3.      By mutual consent of the parties, this Decree may be amended in the interests of justice and fairness and to facilitate execution of this Decree's provisions.  No waiver, modification, or amendment of any provision of this Decree will be effective unless made in writing, approved by all parties to this Decree, and approved or ordered by the Court.

## DEFINITIONS

In addition to terms defined throughout this Decree, the following definitions apply to this Decree:

4.      **Best Efforts**: Best Efforts means devoting resources including staffing and funding that are designed to ensure that the objectives of this Decree are achieved during the Term of this Decree.

5.      **Covered Facility**:  Covered Facility means Upstate's dairy production facilities on Dale Road in Buffalo, New York; on Fulton Avenue in Rochester, New York; and on North America Drive in West Seneca, New York (collectively, the "Covered Facilities").

6.      **Effective Date**:  The Effective Date of this Decree is the date on which the Court enters the Decree.

7.      **Eligible Claimant(s)**: For purposes of this Decree, an Eligible Claimant (1) is female; (2) applied for a Production Position with Upstate at a Covered Facility on or after January 1, 2008 through October 31, 2019 and was not hired; and 3) timely complied with all requirements, as set forth in this Decree, to be eligible for receipt of settlement payment(s).

8.      **Production Positions**:  For purposes of this Decree, Production Positions include Machine Operators, Filler Operators, Warehouse Laborers, Cooler Loaders, Receivers, Maintenance Mechanics, or Plant Maintenance employees at the Covered Facilities.

## INJUNCTIVE RELIEF

9.      Upstate shall not discriminate on the basis of sex in any phase of hiring or recruitment of employees for Production Positions at the Covered Facilities.

10.     Upstate is enjoined from engaging in retaliation of any kind against any person because such person has opposed any practice prohibited by this Decree or Title VII, filed a charge of discrimination under Title VII, testified or participated in any manner in any investigation, proceeding, or hearing under Title VII, or asserted any rights under Title VII or this Decree, or because such person was identified as a possible witness in connection with this matter.

11.     With respect to Production Positions, Upstate shall keep, preserve, and retain all applications, application materials (including but not limited to resumes, letters, written

employment inquiries, e-mails, and notes of applicant interviews), communications between itself and any third party (*e.g.*, job-posting website, newspaper) regarding recruitment efforts or advertisements for employment, and any other materials which reflect information provided to Upstate regarding job applicants, for the duration of this Decree.

## **RECRUITMENT PLAN**

12.     Within 90 days of the effective date of this Decree, Upstate shall develop and institute a Recruitment Plan (the "Plan") to recruit women in Production Positions. Upstate shall provide a copy of the Plan to the EEOC prior to its implementation. The Plan will, at a minimum, contain the following provisions.

> (a)     The Plan will include outreach and recruitment strategies aimed at increasing the number of female applicants, including announcement materials aimed at increasing applications from women, and collaboration with organizations that promote women's employment in this or similar industries.

> (b)     The Plan will implement policies and procedures for evaluating and selecting applicants based on their qualifications and interest in open Production Positions and not on their sex. This will include a review of all Production Positions to evaluate actual job requirements and establish valid selection criteria for such positions.  For any open Production Position, Upstate will share the relevant job requirements and selection criteria with any official who participates in the hiring process for that position, including any official who reviews submitted applications.

(c)    The Plan will implement a procedure for documenting the reasons for interviewing or not interviewing each applicant.

(d)    The Plan will implement standard procedures for conducting interviews and evaluating applicant interview performance without regard to sex using valid selection criteria.  Immediately prior to any interview, Upstate will share the relevant job requirements and selection criteria with any official who participates in the interview.  The Plan will implement a procedure for documenting the interview performance of each interviewee.

(e)    The Plan will implement a procedure for documenting the reasons for Upstate's ultimate hiring decisions, as well as regular internal monitoring of those decisions to ensure they are being made without regard to sex.

(f)    The Plan will establish a goal where the percentage of females hired into Production Positions, at a minimum, matches fifteen percent (15%) (the "Hiring Goal").

(g)    The Plan will also provide for quarterly monitoring of progress toward the Hiring Goal, as well as an evaluation of any barriers to achieving the Hiring Goal and a plan for eliminating those barriers.  Upstate will document its findings in a written quarterly report, which it will share with the EEOC on a quarterly basis.  The first such quarterly report will be due on or before June 30, 2020 and continue quarterly thereafter.

13.    Upstate shall use Best Efforts to implement the Plan. Failure to achieve the Hiring Goal as outlined in Paragraph 12(f) will not be a breach of this Decree as long as Best Efforts are

used to achieve the Hiring Goal.  In attempting to meet the Hiring Goal, Upstate shall not be required to select any unqualified person or to displace any incumbent employee from his or her position.

14.     Hiring-Official Appraisal: The Plan will implement procedures for including in the performance evaluation of any official involved in the hiring process—including officials who recruit applicants, review applications, conduct interviews, or make hiring decisions—a rating or metric that evaluates the official's compliance with the Plan and any other requirements of this Agreement related to hiring.

## ADOPTION, POSTING, AND DISTRIBUTION OF POLICY PROHIBITING EMPLOYMENT DISCRIMINATION

15.     Within five (5) business days of the Effective Date of this Decree, Upstate will distribute to all current employees at the Covered Facilities an antidiscrimination policy that prohibits discrimination on the basis of sex, outlines a procedure for making complaints or reports of discrimination, and identifies the individuals with whom complaints or reports should be filed (the "Antidiscrimination Policy," attached as **Exhibit A**).  The Policy shall, at a minimum, expressly prohibit all forms of discrimination and retaliation prohibited by Title VII, state expressly that such prohibition applies to employees and applicants for employment, and inform employees that they are entitled to make complaints or reports of unlawful employment discrimination to Upstate and to the EEOC.  The attachment of the Policy to this Decree is not an endorsement by the EEOC or by the Court that Upstate has been or is in compliance with federal anti-discrimination laws.

16.     Upstate shall provide a copy of the Antidiscrimination Policy to all employees hired at the Covered Facilities after the Effective Date this Decree within five (5) business days

of the start of their employment.  Upstate will redistribute the Antidiscrimination Policy to all employees at the Covered Facilities on at least an annual basis.

17.     Within five (5) business days of the Effective Date of this Decree, Upstate will post a copy of the Antidiscrimination Policy in the Covered Facilities in locations visually accessible to and commonly frequented by Upstate's employees and in locations typically used by Upstate for posting notices directed to employees or job applicants.

18.     Within five (5) business days of the Effective Date of this Decree, Upstate will conspicuously display and maintain EEO posters in the Covered Facilities in locations visually accessible to and commonly frequented by Upstate's employees and in locations typically used by Upstate for posting notices directed to employees or job applicants.

19.     Within five (5) business days of the Effective Date of this Decree, Upstate will post the "Notice of Lawsuit and Settlement," attached as **Exhibit B**, in the Covered Facilities in locations visually accessible to and commonly frequented by Upstate's employees and in locations typically used by Upstate for posting notices directed to employees or job applicants.

## RECORDKEEPING AND REPORTING

20.     During the Term of this Decree, Upstate shall maintain and make available for inspection and copying by the EEOC written records of every complaint or report (oral or written, formal or informal, internal or external) by any person of discrimination in recruitment or hiring at the Covered Facilities on the basis of sex and/or retaliation prohibited by this Decree. For each such complaint or report, such records shall include: (a) the name of the applicant or employee who made the complaint or report and that applicant's or employee's address and telephone number; (b) the date of the complaint or report; (c) a written description of what was alleged in the complaint or report; (d) a written description of the resolution or outcome of the

complaint or report, including a description of what actions, if any, Upstate took; and (e) if the complaint or report was made in written form, a copy thereof.

21.    Upstate shall require personnel within its employ, upon request by the EEOC, to cooperate reasonably with and to be interviewed by the EEOC for purposes of verifying compliance with this Decree.  Upstate shall permit a representative of the EEOC to enter Upstate's premises on five (5) business days' notice, during normal business hours, for purposes of interviewing Upstate's employees or inspecting any relevant documents or records or otherwise verifying compliance with this Decree; provided, however, that the EEOC may enter Upstate's premises without advance notice, during normal business hours, for the sole purpose of verifying compliance with the notice posting requirements of Paragraphs 17-19. The EEOC will check in with Upstate's office at each Covered Facility to gain admittance for any such inspection. The Parties agree that a representative of Upstate may be present during any such inspection or any interview of an Upstate management employee.

22.    Upon request by the EEOC, Upstate shall produce any non-privileged records that show or relate to Upstate's compliance with the terms of this Decree within twenty-one (21) calendar days of such request.

23.    In addition to the quarterly reports provided pursuant to Paragraph 12(g), Upstate shall furnish to the EEOC the following written reports semi-annually ("Semi-Annual Report") during the Term of this Decree.  The first Semi-Annual Report shall be due six (6) months after the Effective Date of the Decree.  Subsequent Semi-Annual Reports shall be due every six (6) months thereafter, except that the final Semi-Annual Report shall be due thirty (30) calendar days prior to the expiration of the Decree.  Each such Semi-Annual Report shall contain:

(a)  A summary of Upstate's good faith efforts to comply with the terms of this Decree.

(b)  A list of any anti-discrimination training sessions that have taken place, including the date, location, duration, and the number of participants in such training, and a copy of the attendance records and all materials used in the training sessions.

(c)  Copies of all records described in Paragraph 20, above, for the six (6) month period preceding the Semi-Annual Report or a certification by Upstate that no complaints or reports of discrimination were received during that period.

(d)  An Excel spreadsheet listing all applicants for Production Positions at the Covered Facilities along with their sex (if known), the position for which they applied, whether they were interviewed, whether they were offered a position and, if so, whether the offer was rejected or accepted, and whether they were hired and the position for which they were hired.

(e)  With respect to the foregoing obligation to report the sex of applicants, Upstate shall be required only to rely upon the voluntary self-identification forms. Upstate shall not be required to have applicants identify their sex when such an applicant chooses not to complete a voluntary self-identification form. However, nothing herein precludes Upstate from listing a sex for an applicant based on available evidence, including application materials submitted and/or visual information.

(f)  A certification by Upstate that the Notice and other matters required to be posted pursuant to Paragraph 17-19 of the Decree remained posted in the

manner required during the entire six (6) month period preceding the Semi-
Annual Report.

24.     Information, documents, data, reports, records and/or other materials provided to
the EEOC under this Section or pursuant to this Decree shall be deemed confidential and shall be
used only for the purposes of monitoring and enforcing this Decree and for the EEOC's law
enforcement purposes.

## TRAINING

25.     Within 120 days of the Effective Date of this Decree, and at least annually
thereafter, Upstate will provide all employees at the Covered Facilities no fewer than two hours
of live in-person training on federal laws prohibiting discrimination in employment, with a
special emphasis on laws prohibiting discrimination on the basis of sex, as well as training on
Upstate's Antidiscrimination Policy and such trainees' responsibilities thereunder.  Newly hired
employees at the Covered Facilities will receive substantially equivalent training within sixty
(60) days after starting in the position, which may occur by viewing a recording of the most
recent live training.

26.     Upstate shall obtain the EEOC's approval of its proposed trainer and the content
the trainer proposes to present before the commencement of any training session required under
Paragraph 25.  The trainer shall not be any of Upstate's owners, officers, or management
employees during or subsequent to the five years preceding the Effective Date of this Decree.
Upstate shall submit the name, address, telephone number, resume and training proposal of its
proposed trainer (including copies of all materials the trainer proposes to display, distribute, or
otherwise present) to the EEOC at least twenty (20) business days prior to the proposed date of
each training session, except that Upstate shall not be required to seek approval for subsequent

10

training sessions if there are no substantive changes to the training plan.  The EEOC shall have

ten (10) business days from the date it receives the information described above to accept or

reject the proposed trainer and/or the content the trainer proposes to present.  In the event the

EEOC does not approve Upstate's proposed trainer and/or content, Upstate shall have five (5)

business days to identify an alternate trainer and/or revise the content its trainer proposes to

present.  The EEOC shall then have five (5) business days from the date it receives the

information described above to accept or reject the alternate trainer and/or content.  If the parties

cannot agree on a trainer or training content through this process, they may seek the Court's

assistance and Upstate's obligations under Paragraph 25 will be held in abeyance pending

resolution of the dispute.

27.     Upstate will maintain attendance records identifying in legible form the name and

job title of the attendees at each session and also containing the signature of each attendee, as

well as copies of all training materials presented.

## **MONETARY RELIEF**

28.     Upstate shall pay $1,350,000 ("Settlement Fund") to Eligible Claimants identified

by the EEOC. The distribution of the Settlement Fund among Eligible Claimants will be

determined solely by the EEOC in its discretion.

29.     Within 10 business days of the Effective Date of this Decree, Upstate shall

provide the EEOC with copies of all employment applications that it received for Production

Positions at its Covered Facilities, as well as a list of the name, job location, and sex of each

employee hired into Production Positions at the Covered Facilities, during the period October 20,

2015 to October 31, 2019.

30.     Within 180 days of receiving the information in Paragraph 29, the EEOC shall send Upstate a spreadsheet identifying the individuals who will receive payments from the Settlement Fund ("Eligible Claimants"). The spreadsheet shall include each Eligible Claimant's name, address, social security number, and the total amount that the individual will receive from the Settlement Fund.  The total amount of the payments in the spreadsheet provided by the EEOC may not exceed the Settlement Fund.

31.     Fifty percent (50%) of the amount distributed from the Settlement Fund to each Eligible Claimant constitutes settlement for back pay claims from which Upstate will withhold federal, state, and local income taxes and the individual's share of federal payroll taxes from each Eligible Claimant's back pay amount, and the other fifty percent (50%) of the amount shall constitute settlement of claims for "compensatory damages," under the Civil Rights Act of 1991, 42 U.S.C. § 1981a, from which Upstate will not withhold any taxes.

32.     Upstate will issue applicable forms W-2 and 1099 based on the year in which such funds are paid to an Eligible Claimant.

33.     As a condition of and in consideration for receiving any monetary payment pursuant to this Decree, any Eligible Claimant must complete, sign and deliver to the EEOC a Waiver and Release in the form attached as **Exhibit C**, as well as IRS Forms W-4 and W-9, which shall be delivered to Upstate prior to the issuance of the Eligible Claimant's payment.

34.     Within twenty (20) business days of receiving the spreadsheet identifying the Eligible Claimants, the original Waiver and Release signed by each Eligible Claimant, and related tax reporting forms, Upstate shall mail the payments via Certified Mail to the address provided by the EEOC for each Eligible Claimant. Upstate shall email copies of the checks to the EEOC.

35.     Monetary payments for deceased Eligible Claimants shall be made to representatives of their estate or next of kin if the EEOC determines appropriate documentation (*e.g.*, letters testamentary or the equivalent) has been provided.

36.      If any payment due under this Decree is not made in full and mailed within the twenty (20) business day period ("Unpaid Amount"),Upstate shall pay interest to the affected Eligible Claimants on the Unpaid Amount at an amount equal to 0.025% of the Unpaid Amount.

37.     The checks will be valid for six (6) months from the date of the check and thereafter will be viewed as stale and void.  At that point, Upstate may stop payment on any check that remains uncashed. At least ten days prior to stopping payment on any check, Upstate shall notify the EEOC of its intention. Six (6) months after the issuance of the payments required by Paragraph 34, Upstate shall notify the EEOC of all checks that remain uncashed or if none remain uncashed.  The uncashed funds will then be distributed among the other Eligible Claimants on a pro rata basis based on the original distribution of the Settlement Fund.  Under no circumstances shall any of the Settlement Fund revert to Upstate.

## TERM OF DECREE AND DISPUTE RESOLUTION

38.     This Decree will remain in effect for a period of four (4) years after the Effective Date (the "Term").  This case may be administratively closed, but will not be dismissed. The Decree will expire by its own terms at the end of the Term, without further action by the parties or the Court, unless the duration of this Decree has been extended by order of this Court.  If a dispute raised under the procedure in Paragraph 41 is not resolved at the end of the Term, then the EEOC may apply to the Court to extend the term of the Decree pending the resolution of the dispute.

39.     It is the intent of the Parties that this Decree does not contravene the terms of any collective bargaining agreement to which Upstate is a party.  Nothing in any future bargaining agreement entered into during the term of this decree can alter Upstate's obligations under this Decree.

40.     Nothing in this Decree shall be deemed to create any rights on the part of non-parties to enforce this Decree.  The right to seek enforcement of this Decree is vested exclusively in the Parties.

41.     In the event that either party to this Decree believes that the other party has failed to comply with any provision(s) of the Decree, the complaining party shall notify the other party of the alleged non-compliance in writing (either via letter or e-mail) and shall afford the alleged non-complying party ten (10) business days to remedy the non-compliance or to satisfy the complaining party that the alleged non-complying party has complied. If the alleged non-complying party has not remedied the alleged non-compliance or satisfied the complaining party that it has complied within ten (10) business days, the complaining party may apply to the Court for appropriate relief, which may include modification of this Consent Decree and/or other relief that the Court determines to be appropriate.

42.     No party will contest the validity of this Decree or that the Court has jurisdiction to enforce this Decree and its terms for all purposes including, but not limited to, the entering of all orders, judgments and decrees as necessary to implement the relief provided herein for the Term.

## **MISCELLANEOUS PROVISIONS**

43.     Each party shall bear its own expenses, attorneys' fees, and costs.

44.     The terms of this Decree are and shall be binding on the present and future directors, officers, managers, agents, successors and assigns of Upstate.  At least twenty-one (21) days prior to any sale or other transfer of Upstate's business or sale or other transfer of all or a substantial portion of Upstate's assets, Upstate shall provide a copy of this Decree to any potential purchaser, potential transferee, or other potential successor.

45.     When this Decree requires a certification by Upstate of any fact(s), such certification shall be made under oath or penalty of perjury by an officer or management employee of Upstate.

46.     This Decree constitutes the complete understanding of the Parties with respect to the matters contained herein.

47.     If one or more provisions of this Decree are rendered or found to be unlawful or unenforceable by an act of Congress or by a decision of the U.S. Supreme Court or the Second Circuit Court of Appeals, the Parties shall make good faith efforts to agree upon the appropriate amendments to this Decree to propose to the Court to effectuate its purposes.  In any event, the unaffected provisions shall remain in full force and effect.

48.     Whenever this Decree requires a party to send documents, reports, forms, notices or other materials to the other party, such materials shall be sent by electronic mail to:

> If to the EEOC:
>
> Jadhira Rivera (jadhira.rivera@eeoc.gov), Sebastian Riccardi
> (sebastian.riccardi@eeoc.gov), and
> "Consent Decree Monitor" (decreemonitor.nydo@eeoc.gov)
>
> If to Upstate:
>
> Robert C. Weissflach (rweissflach@hselaw.com) and
> Amy L. Hemenway (ahemenway@hselaw.com)

Any party may change such persons or e-mail addresses by written notice to the other party, setting forth a different individual or e-mail address for this purpose.

APPROVED IN FORM AND CONTENT:

**FOR PLAINTIFF U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

JEFFREY BURSTEIN
Regional Attorney

JUSTIN MULAIRE
Supervisory Trial Attorney

JADHIRA RIVERA
Senior Trial Attorney

SEBASTIAN RICCARDI
Trial Attorney

U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Newark Area Office
Two Gateway Ctr., Ste. 1703
283-299 Market Street
Newark, New Jersey 07102
Tel: 973-645-6025
jadhira.rivera@eeoc.gov

**FOR UPSTATE NIAGARA COOPERATIVE, INC.,**

CEO Upstate Niagara Cooperative, Inc.

SO ORDERED, ADJUDGED AND DECREED this _____ day of _____, 2020.

_____
United States District Judge

16

# EXHIBIT A

# EQUAL EMPLOYMENT OPPORTUNITY, ANTI-DISCRIMINATION AND ANTI-HARASSMENT POLICY

## I.  Equal Employment Opportunity and Anti-Discrimination Policy

Upstate Niagara Cooperative, Inc. ("Upstate") is committed to a policy of equal employment opportunity with respect to all employees and applicants for employment. In order to provide equal employment and advancement opportunities to all individuals, employment decisions at Upstate will be based on merit, qualifications, and abilities. We do not discriminate against employees or applicants in hiring, promotion, compensation, placement, termination, layoff, recall, transfer, leaves of absence or any other term or condition of employment on the basis of race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability, genetic information, marital status, military status, domestic violence victim status, criminal history status, or any other protected category in accordance with applicable federal, state, and local laws.

Upstate will endeavor to make reasonable accommodations for the known physical or mental limitations of a qualified applicant or employee with a disability or who may be a victim of domestic violence, unless doing so would result in an undue hardship on Upstate.  Likewise, we will make reasonable accommodations upon request arising out of an individual's religious beliefs or practices, unless doing so would result in an undue hardship on Upstate.

This policy governs all aspects of employment, including but not limited to recruiting, advertising, hiring, job assignment, promotion, compensation, discipline, termination, and access to benefits and training.

Upstate also strongly prohibits any retaliatory behavior against complainants or witnesses who report acts of unlawful discrimination or harassment, or individuals who assist or participate in any investigation, compliance evaluation, hearing, or any other activity related to laws requiring equal employment opportunity. Retaliatory behavior may include harassment, intimidation, threats, coercion, or discrimination.

Any employee that has been subjected to, experienced, witnessed, or has knowledge of any discrimination of or retaliation against an Upstate employee by another employee or by a supervisor, visitor, vendor or contractor, is encouraged to report it immediately to the employee's supervisor. If the employee is unable to report the discrimination or retaliation to the supervisor, then they are encouraged to report to [HR or Management Representative]. Applicants may make complaints of discrimination or retaliation to [HR or Management Representative].

All complaints of discrimination and/or retaliation will be investigated and resolved promptly by [HR or Management Representative].  The investigation will be kept confidential to the greatest extent practicable, consistent with Upstate's need to conduct an adequate investigation so that, where warranted, it can take prompt and appropriate action.

Appropriate disciplinary action will be taken against any employee who violates this policy against unlawful discrimination and retaliation. Based on the seriousness of the offense, disciplinary action may include verbal or written reprimand, suspension or termination. Any retaliatory conduct by the alleged harasser shall be severely punished.

Upstate's Chief Executive Officer supports this policy and supports Upstate's affirmative action programs. For inquiries concerning Upstate's commitment to equal employment opportunity, affirmative action and general demographic information on Upstate's workforce, please refer to Upstate Niagara's Affirmative Action Plan, which can be reviewed by request directed to the Chief Human Resource Officer.

The Chief Human Resource Officer serves as our Affirmative Action Officer and overall responsibility for the implementation of equal employment opportunity and affirmative action programs. This includes implementing an audit and reporting system to evaluate the effectiveness of this equal employment opportunity and affirmative action programs and to identify potential areas and degrees of underrepresentation and underutilization, and other potential disparities in all selection processes, and indicate the need for remedial action.

## II.     Anti-Harassment Policy

### A.     Purpose

Upstate is committed to safeguarding the rights of all employees and to providing a work environment that is free from all forms of discrimination, including unlawful harassment and retaliation.  This policy applies to all employees, whether supervisory or non-supervisory, applicants for employment, interns (paid or unpaid), contractors, vendors, volunteers and persons conducting business with the Upstate.  To the extent possible, Upstate will also take efforts to protect its employees from reported harassment by non-employees who are visiting Upstate or who have a relationship with the Upstate.  Upstate will also take appropriate steps, when necessary, to prevent its employees from harassing non-employees (e.g., contractors, vendors, volunteers, visitors, etc.).

Harassment is offensive, a violation of our policies, is unlawful, and subjects Upstate to liability for harm to victims of harassment.  Harassers may also be individually subject to liability.  Employees who engage in sexual harassment, including supervisors, who engage in such conduct or who knowingly allow such behavior to continue, will be penalized.

All employees must ensure they understand this policy and their obligations.  Employees can enforce their right to a workplace free from harassment by filing a complaint internally with Upstate, with a government agency or in court under federal, state or local antidiscrimination laws.

B.      **Prohibited Forms of Harassment**

Unlawful harassment consists of unwelcome conduct (whether verbal, physical, or visual) that is based upon a person's protected status, such as actual or perceived race, color, religion, sex, sexual orientation, gender identity, national origin, age, disability, genetic information, marital status, military status, domestic violence victim status, criminal history status, or any other protected category in accordance with applicable federal, state and local laws. It includes behavior, written/graphic material or comments intended as humor. The use of Upstate's facilities to disseminate, duplicate or display such materials is prohibited.  Unlawful harassment of any kind is prohibited in the workplace, in outside work assignments or at employer-sponsored functions, events or programs.  Upstate will not tolerate harassing conduct in the workplace which:

- Has the purpose or effect of creating an intimidating, hostile, or offensive work environment;

- Has the purpose or effect of unreasonably interfering with an individual's work performance; or

- Otherwise adversely affects an individual's employment opportunities at Upstate.

Harassment can occur in a variety of circumstances, including, but not limited to, the following:

- The harasser can be the victim's supervisor, a supervisor in another area, an agent of the employer, a co-worker or a non-employee.

- The victim does not have to be the person to whom the conduct or comment is directed but can be anyone who is affected by the offensive conduct or comment.

- Unlawful harassment may occur without economic injury to the victim.

Harassing conduct may include, but is not limited to, the following kinds of conduct:

- Verbal abuse, such as epithets, slurs, negative stereotyping, or threatening, intimidating, or hostile acts (even if claimed to be "jokes" or "pranks") which relate to actual or perceived race, color, creed, religion, sex or gender, national origin, age, disability, marital status, sexual orientation, military status, veteran status, genetic predisposition or carrier status, victim of domestic violence status, or another protected status; and

- Written or graphic material that denigrates or shows hostility or aversion toward an individual or a group because of actual or perceived race, color, creed, religion, sex or gender, national origin, age, disability, marital status, sexual orientation, military status, veteran status, genetic predisposition or carrier status, victim of domestic violence status, or another protected status and is displayed or circulated in the workplace.

3

While petty slights, annoyances and isolated incidents typically will not rise to the level of unlawful harassment, a single severe incident of inappropriate behavior may be enough to be considered unlawful, depending on the circumstances.

Any harassment in violation of these rules is absolutely prohibited and will not be tolerated.  Should unlawful harassment occur, Upstate will take appropriate corrective action to prevent its continuation or recurrence.  Violation of these rules will result in disciplinary action, up to and including discharge, or termination of the contract/relationship of Upstate with a contractor or vendor.

No supervisor, employee, or any other person at Upstate has any authority whatsoever to harass employees in violation of these rules.  If anyone claims to have such authority, or if you have any questions about whether conduct that you find objectionable is authorized by Upstate, please contact your immediate supervisor, or [HR or Management Representative].

C.    **Sexual Harassment**

Sexual harassment is a violation of law and stands in direct opposition to Upstate's policy.  Every employee is entitled to a working environment free from sexual harassment. Sexual harassment is a form of sex or gender discrimination and is unlawful under the Federal Civil Rights Act of 1964 (Title VII), as amended, the New York State Human Rights Law. Consistent with its values and legal obligations, Upstate prohibits and condemns all forms of sexual harassment by employees and non-employees, such as contractors, vendors, visitors, volunteers, etc., which occur on the premises of Upstate and at all Upstate-sponsored events, programs and activities, including those that take place at locations off Upstate's premises, such as business-related travel, business meetings and business-related social events.

1.  *What is sexual harassment?*

Sexual harassment includes unwelcome conduct which is either of a sexual nature, or which is directed at an individual because of that individual's sex when:

- Such conduct is made either explicitly or implicitly a term or condition of employment;

- Submission to or rejection of such conduct is used as a basis for employment decisions affecting an individual's employment; or

- Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile or offensive work environment, even if the complaining individual is not the intended target of the sexual harassment.

Generally, there are two types of sexual harassment:

- "Hostile environment" sexual harassment consists of words, signs, jokes, pranks, intimidation or physical violence of a sexual nature or directed toward an individual because of the individual's sex.  Hostile environment sexual harassment also consists of any unwanted verbal or physical advances, sexually explicit derogatory statements, or sexually discriminatory remarks made by someone in the workplace that are offensive or objectionable to the recipient, that cause the recipient discomfort or humiliation, or that interfere with the recipient's job performance.

- "Quid quo pro" sexual harassment occurs when a person in authority tries to trade job benefits for sexual favors.  This can include any term or condition of employment, such as hiring, promotion, or continued employment.  Only employees who have authority to grant or withhold benefits may be deemed to engage in this type of harassment.

Sexual harassment can occur between males and females, or between persons of the same sex, regardless of sexual orientation.  It can originate from a co-worker, a supervisor, or from a third party who is not an employee, such as a contractor, vendor, volunteer, visitor, etc., or any other individual associated with Upstate.  A perpetrator of sexual harassment can be a supervisor, subordinate, co-worker or anyone in the workplace, including a contractor, vendor, volunteer or visitor.  Sexual harassment based upon gender identity or transgender status is also unlawful.

### 2. *What conduct constitutes sexual harassment?*

Sexual Harassment does not refer to behavior or occasional compliments of a socially acceptable nature.  It refers to gender-based discrimination or behavior that is not welcome, that is personally offensive, that fails to respect the rights of others, that lowers morale and that, therefore, interferes with work effectiveness.  Sexual Harassment may take different forms.  Sexually harassing conduct can consist of unwanted verbal or physical sexual advances, sexually explicit statements, or discriminatory remarks that are offensive or objectionable to the recipient.  While one joke or comment typically does not rise to the level of unlawful sexual harassment, a single severe incident of inappropriate sexual behavior may be serious enough to be considered unlawful, depending on circumstances.  Examples of sexual harassment include but are not limited to:

- Physical assaults of a sexual nature, such as:

  - Rape, sexual battery, molestation, or attempts to commit these acts;

  - Intentional or unintentional unwanted physical conduct that is sexual in nature, such as touching, kissing, hugging, pinching, patting, grabbing, fondling, brushing against another employee's body, or poking another employee's body.

5

- Unwanted sexual advances, propositions or other sexual comments, such as:

  o Requests for sexual favors accompanied by implied or overt threats concerning the victim's job performance evaluation, a promotion, or other job benefits or detriments;

  o Subtle or obvious pressure for unwelcome sexual activities;

  o Sexual innuendos, suggestive comments, jokes of a sexual nature, sexual propositions, or questions/comments about a person's gender, sexuality, sexual preferences or sexual experience, that are sufficiently severe to create a hostile work environment.

- Sexual or discriminatory displays or publications anywhere in the workplace, such as:

  o Displaying pictures, posters, calendars, graffiti, objects, promotional material, reading materials, or other materials that are sexual in nature, obscene or pornographic.

### 3. *What laws govern sexual harassment and what remedies do they provide?*

The Federal Civil Rights Act of 1964, as amended, often referred to as Title VII, and the New York State Human Rights Law, prohibit unlawful sexual harassment. There may also be local laws that govern sexual harassment in the workplace.

A victim who establishes that unlawful harassment occurred may be entitled to any of the following remedies:

- Injunctive relief ordering the employer to cease and desist in the unlawful conduct, or requiring the employer to provide affirmative relief (e.g., hiring, promotion or reinstatement);

- Back pay;

- Other compensatory or punitive damages (amount may be subject to a cap); and

- Attorney's fees and court costs.

**Retaliation**

Retaliation for making a complaint about harassment, sexual harassment or other discrimination is prohibited by law. No employee will be retaliated against for making a good faith complaint of discrimination or harassment. Upstate prohibits any retaliatory behavior, including intimidation, threats or coercion, directed against complainants, victims, witnesses, and/or any other individuals who participated in the investigation of a complaint of discrimination or unlawful harassment.

No person covered by this policy shall be subject to adverse employment action as a result of one's engagement in protected activity.  Adverse actions can include, but are not limited to, discharge, refusal to hire, and denial of promotion.  Protected activity can include, but is not limited to, filing a formal written complaint of harassment, either internally, or with any anti-discrimination agency; testifying or assisting in a proceeding involving harassment; opposing harassment by reporting harassment of one's self or another to an immediate supervisor or the [HR or Management Representative]; or encouraging another individual to report harassment.

Follow-up inquiries shall be made to ensure that the discrimination and/or unlawful harassment has not resumed and that all those involved in the investigation of the complaint have not suffered retaliation.  Individuals who violate this policy or retaliate against another in any way will be subject to disciplinary action, up to and including discharge.  Any employee or non-employee who believes they have been a victim of such retaliation may seek compensation in other available forums.

D.    **Complaint Procedures**

1. *How does an employee submit a complaint?*

Upstate is committed to investigating all complaints about alleged harassment or sexual harassment occurring in the workplace, but it can only act on the conduct of which it is aware. In order for Upstate to enforce this policy, and to take corrective measures as may be necessary, it is essential that any employee who believes he/she has been a victim of harassment in the work environment, as well as any other person who is aware of and/or who has knowledge of or witnesses any possible occurrence of harassment, immediately report such alleged harassment to their immediate supervisor or [HR or Management Representative].  The Chief Human Resource Officer has overall responsibility for investigating complaints and this Policy's enforcement. These concerns may be raised at any time, without the scheduling of an appointment. Any individual affected by harassing or sexually harassing behavior may complain, even if he/she was not the direct victim of the offensive behavior.  Even in the absence of a complaint, if Upstate has knowledge or, or has reason to know of or suspect any occurrence of harassment, it will investigate such conduct promptly.

All supervisors who receive a complaint or information about suspected sexual harassment, observe what may be sexually harassing behavior or for any reason suspect that sexual harassment is occurring, **are required** to report such suspected sexual harassment to [HR or Management Representative].

Employees may use the Harassment/Discrimination Complaint Form, available in the Human Resources Department to make a complaint, but they are not required to do so, and the choice to make a complaint in another format (e.g., orally, via email, etc.), will not cause a delay in investigating the complaint.

### 2.  *What procedures does Upstate follow to investigate complaints?*

All complaints or information about suspected harassment will be investigated, whether that information was reported in verbal or written form.  Upon receipt of an informal/formal complaint, Upstate will conduct an investigation of the complaint, according due process to all involved in order to protect the rights of all involved parties to a fair and impartial investigation.  However, even in the absence of a complaint, if Upstate has knowledge of or has reason to know of or suspect any occurrence of harassment, it will investigate such conduct promptly.

The nature, details and length of the investigation process will vary depending on the details of the complaint.  The objective of Upstate in every instance is to make a fair determination of what happened so it can then take corrective action, if warranted.  The investigation may include, among other things, interviews of witnesses and the person who is the subject of the complaint, as well as reviews of relevant documents, emails, phone records, etc.  The accuser and accused will both be given the opportunity to provide relevant information.

Upstate will create a written documentation of the investigation, which contains information related to all information reviewed and all individuals interviewed in relation to the alleged harassment.  The documentation will include the final resolution of the complaint, together with the corrective action(s) taken, if any.

Upstate considers harassment to be a form of employee misconduct and will enforce sanctions against any employee found to have engaged in harassment.  Specifically, any employee who has been found to have harassed another employee or a third party based upon the results of an investigation may be subject to appropriate disciplinary action, such as training, referral to counseling and/or disciplinary action such as warning, reprimand, withholding of a promotion or pay increase, reassignment, temporary suspension without pay, or discharge.  Further, Upstate will enforce corrective action against any supervisor who knowingly allows such behavior to occur or continue.

Even if no specific violation of this policy is found, Upstate may nonetheless still impose corrective action if an individual engages in other behavior inappropriate for the workplace.  Third parties (such as contractors, vendors, volunteers, visitors, etc.) who are found to have violated this policy will be subject to appropriate sanctions as warranted and in compliance with applicable law.

To the greatest extent possible, within legal constraints, all complaints will be treated as confidentially and privately as possible.  However, limited disclosure may be necessary to complete a thorough investigation of the charges, and any disclosure will be provided on a "need to know" basis.

### *3.  What other forms of redress are available to address complaints of harassment?*

Upstate hopes that employees will be comfortable reporting their concerns about suspected harassment so that it may investigate and address those concerns, although it understands that some employees may choose to pursue other avenues to redress their concerns. Employees may file an administrative complaint of harassment with the U.S. Equal Employment Opportunity ("EEOC") or the New York State Division of Human Rights ("Division").

An individual can file a complaint with the EEOC anytime within 300 days from the harassment.  The EEOC has district, area, and field offices where complaints can be filed. Contact the EEOC by calling 1-800-669-4000 (TTY: 1-800-669-6820), visiting their website at www.eeoc.gov or via email at info@eeoc.gov.

Complaints with the Division may be filed at any time within one year of the harassment (three years as of August 12, 2020). If an individual does not file at the Division, he/she can sue directly in state court under the Human Rights Law, within three years of the alleged harassment. More information can be found at www.dhr.ny.gov/complaint.

If the harassment involves physical touching, coerced physical confinement or coerced sex acts, the conduct may constitute a crime.  Contact the local police department.

# EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Buffalo Local Office**

300 Pearl St.
Buffalo, NY 14202
Phone: (716) 551-4441
Fax: (716) 551-4387

## NOTICE OF LAWSUIT AND SETTLEMENT

This Notice is being posted as part of a Consent Decree, settling a lawsuit brought by the U.S. Equal Employment Opportunity Commission ("EEOC") against Upstate Niagara Cooperative, Inc., in Federal court in the Western District of New York (Civil Action No. 16-cv-00842). In its lawsuit, the EEOC alleged that Upstate unlawfully discriminated against female applicants for production positions at three production facilities in Rochester, Buffalo, and West Seneca, New York.

Federal law prohibits employers from discriminating against employees and applicants based on sex, national origin, religion, race, color, age, disability, or genetic information. Federal law also prohibits employers from retaliating against individuals who complain about or oppose discrimination or participate in any way in the processing of a complaint.

Upstate and its managers and supervisors will support and comply with Federal law prohibiting discrimination against any employee or applicant for employment because of that employee's sex.

As part of the settlement, Upstate agreed that it:

1. Will comply with Federal law and not discriminate against applicants for production positions based on their sex in any phase of hiring or recruitment of employees for production positions or retaliate against any person who exercises his or her rights under Title VII;
2. Will maintain and distribute written policies and procedures prohibiting discrimination and enabling employees to file complaints;
3. Will provide training on Federal laws prohibiting employment discrimination to all current and future employees;
4. Will permit EEOC to monitor compliance with the Consent Decree;
5. Will post and distribute this Notice; and
6. Will provide monetary relief to eligible claimants.

Should you have a complaint of discrimination, follow Upstate Niagara Cooperative, Inc. policy for reporting such complaints, or you may contact the EEOC at:

U.S. Equal Employment Opportunity Commission
Buffalo Area Office, 300 Pearl St., Buffalo, NY 14202,
Phone: 1-800-669-4000 | Website: http://www.eeoc.gov
TTY (for hearing impaired): 1-800-669-6820 | ASL Video Phone (for hearing impaired): 1-844-234-5122

Dated: _____

**THIS OFFICIAL NOTICE MUST NOT BE ALTERED OR DEFACED BY ANYONE OR COVERED BY ANY OTHER MATERIAL**

**This notice must remain posted for four years from date shown above. Any question concerning this Notice or compliance with its provisions may be directed to the U.S. Equal Employment Opportunity Commission at the number listed above.**

# EXHIBIT C

# WAIVER AND RELEASE

In consideration for $\_\_\_ to be paid to me by Upstate Niagara Cooperative, Inc. in connection with the resolution of <u>EEOC v. Upstate Niagara Cooperative, Inc.</u>, 16-cv-00842, I for myself and or my executors, heirs, successors, representatives, and assigns, irrevocably and unconditionally waive and release my right to recover for any claims of employment discrimination arising under Title VII of the Civil Rights Act of 1964, as amended, and any related damages, costs, and/or attorney's fees, that I had against Upstate Niagara Cooperative, Inc., and its agents, officers, shareholders, members, directors, employees, attorneys, subsidiaries, affiliates, successors and assigns, and any other persons or entities acting on their behalf ("Released Parties"), prior to the date of this release and that were included in the claims alleged in the EEOC's complaint in <u>EEOC v. Upstate Niagara Cooperative, Inc.</u>, 16-cv-00842.

I have carefully read this Release and have had a full opportunity to consider and understand its terms and to consult with my own advisors.  I enter into this Release knowingly and voluntarily, without coercion or threat of reprisal.


Date: _____          Signature: _____
                                        Name